# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Kelly L. Stephens | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed:  October 21, 2024

Ms. Bridget Asay
Stris & Maher
725 S. Figueroa Street, Suite 1830
Los Angeles, CA 90017

Ms. Alexis Bates
Jenner & Block
353 N. Clark Street
Chicago, IL 60654

Mr. Troy W. Haney
Haney Law Office
330 E. Fulton Street
Grand Rapids, MI 49503

Ms. Rachana Pathak
Stris & Maher
777 S. Figueroa Street
Suite 3850
Los Angeles, CA 90017

Mr. Paul M. Secunda
Walcheske & Luzi
235 N. Executive Drive, Suite 240
Brookfield, WI 53005

Ms. Colleen R. Smith
Stris & Maher
1717 K Street, N.W.
Suite 900
Washington, DC 20006

Mr. John Stokes
Stris & Maher
777 S. Figueroa Street
Suite 3850
Los Angeles, CA 90017

Mr. Peter K. Stris
Stris & Maher
777 S. Figueroa Street
Suite 3850
Los Angeles, CA 90017

Mr. Joseph J. Torres
Jenner & Block
353 N. Clark Street
Chicago, IL 60654

      Re: Case No. 23-1966, *Bradley Fleming v. Kellogg Company, et al*
         Originating Case No. : 1:22-cv-00593

Dear Counsel,

 The Court issued the enclosed opinion today in this case.

 Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

            Sincerely yours,

            s/Cathryn Lovely
            Opinions Deputy

cc: Ms. Ann E. Filkins

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0413n.06

Case No. 23-1966

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| BRADLEY H. FLEMING, ) | |
| Plaintiff-Appellant, ) | FILED |
| ) | Oct 21, 2024 |
| v. ) | KELLY L. STEPHENS, Clerk |
| ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| KELLOGG COMPANY et al., ) | |
| Defendant-Appellee. ) | |
| ) | O P I N I O N |

Before: GIBBONS, KETHLEDGE, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Plaintiff-Appellant Bradley H. Fleming, a participant in a defined contribution retirement plan in the form of a 401(k) established by his former employer, Kellogg Company[1], filed an action against the fiduciaries of the Plan alleging that they breached their fiduciary duties owed to the Plan. Fleming asserted that Kellogg's imprudence damaged the Plan to the tune of more than $7 million in excessive recordkeeping and administrative fees paid between 2016 and 2020. In his amended complaint, Fleming sought various forms of relief, including appointment of an independent fiduciary to manage the Plan and an order directing Kellogg to restore all losses to the Plan and to disgorge any profits it obtained from the fiduciary breaches. Kellogg moved to dismiss the complaint and compel arbitration pursuant to the arbitration clause in the plan document. The district court granted the motion and dismissed

---
[1] Now known as Kellanova.

No. 23-1966, *Fleming v. Kellogg Company et al.*

Fleming's claims, concluding that enforcing the Plan's arbitration provision would not prevent Fleming from effectively vindicating the statutory remedies sought in his complaint. Fleming appeals that ruling. We reverse.

## I.

*Factual Background.* Kellogg is a global food manufacturing company where Fleming worked as an accountant for thirteen years until August 2019. Kellogg offers its employees several benefits, one which is the opportunity to participate in the Kellogg Company Savings and Investment Plan, a defined contribution 401(k) plan (the "Plan"). The Plan allows employees to set aside a portion of their pre-tax earnings, obtain employer matching contributions, and invest the total of the employee and employer contributions. The value of these investments is allocated to individual employees' accounts for bookkeeping purposes, but the Plan's assets (over $1 billion) are held collectively in a trust.

Fleming alleges that, over a four-year period, the Plan's fiduciaries caused it to pay recordkeeping and administrative ("RK&A") fees to its recordkeeper, Transamerica Retirement Solutions, that were four times higher than such fees paid by other "mega" plans. And because of Kellogg's imprudence, "the Plan paid an effective average annual recordkeeping fee of $137 per participant." (R. 15, PageID 866, ¶ 100). From 2016 to 2020, says Fleming, the fiduciaries' ill-considered RK&A payments cost the Plan and its participants a minimum of $7,462,978 and injured Fleming's account in the process.

The Plan was amended, effective January 1, 2020, to require arbitration of certain claims, including those for breach of fiduciary duty. After the amendment, Section 17.4(b) of the Plan read in relevant part:

> Any arbitration will be conducted on an individual basis only, and not on a class, collective or representative basis . . . . The arbitrator shall have no

- 2 -

No. 23-1966, *Fleming v. Kellogg Company et al.*

> authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. By participating in the Plan and accepting benefits hereunder, Participants and Beneficiaries waive the right to participate in a class, collective or representative action; provided, however, that if such waiver is held by a court of competent jurisdiction to be unenforceable, any claim on a class, collective or representative basis shall be filed and adjudicated in federal district court in the Western District of Michigan, and not in arbitration.

(R. 12-2, PageID 243).

Fleming, who had stopped working at Kellogg about four months before the arbitration provision went into effect, contends that he neither received notice of the mandatory arbitration clause nor personally assented to arbitration. About seven months after the Plan adopted the mandatory arbitration provision, Fleming rolled out of the Plan. Then, on December 17, 2021, Kellogg retroactively amended Section 17.4(b) to include one additional phrase:

> "The arbitrator shall have no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis; *provided, however, that the arbitrator may award any relief otherwise available under ERISA.*"

(R. 12-3, PageID 268) (emphasis added). Fleming also received no notice of the amended arbitration clause. Both arbitration clauses (2020 and 2021) are expressly non-severable. *See, e.g.*, *Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 503 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 328 (2023) (stating that arbitration provision containing class action waiver is expressly non-severable where entire arbitration provision would be nullified if class action waiver were to be found unenforceable by a court of competent jurisdiction).

*Procedural History.* Fleming's amended complaint against Kellogg, Steven A. Cahillane, the ERISA Administrative Committee of Kellogg, and the ERISA Finance Committee of Kellogg (collectively, "Kellogg") asserts two claims under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), to

No. 23-1966, *Fleming v. Kellogg Company et al.*

redress Kellogg's alleged imprudence.  Fleming sought plan-wide monetary and equitable relief, including (1) an order directing Kellogg to restore all losses to the Plan and to disgorge any profits obtained as a result of any fiduciary breaches, and (2) the appointment of an independent fiduciary to manage the Plan.

Defendants moved to dismiss the amended complaint and order arbitration based on the 2020 and 2021 arbitration clauses.  The district court granted the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  In doing so, the district court agreed with Defendants "that the Kellogg arbitration provision constitutes sufficient manifestation of the Kellogg Plan's consent to arbitrate, and the provision properly applies to representative suits brought on behalf of the Kellogg Plan."  (R. 42, PageID 1172–73).  Fleming moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), seeking clarification about whether "the arbitrator may award all of the Plan-wide relief that a federal court can award under ERISA Sections 409(a) and 502(a)(2)."  (R. 43, PageID 1178).  The court denied the Rule 59(e) motion without addressing whether the arbitrator was authorized to award full loss restoration and other plan-wide relief.  Fleming timely appealed.[3]

## II.

We review de novo a district court's decision to dismiss a suit and compel arbitration.  *See Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 836 (6th Cir. 2021).  Because Fleming

---

[2] In *Smith v. Spizzirri*, 601 U.S. 472 (2024), the Supreme Court answered whether Section 3 of the FAA permits a federal district court to dismiss a case, as opposed to staying it, when the action is subject to arbitration and a party requests a stay pending arbitration.  The Court explained that the statute does not permit dismissal.  *Id.* at 477–78.  Instead, when a motion to compel arbitration is granted, the district court must enter a stay at the party's request.  *Id.*  Here, Fleming did not request that the district court stay the case pending arbitration.  Therefore, the district court's dismissal of the case was not improper under *Spizzirri* but was improper for other reasons as explained herein.

[3] Fleming and Kellogg initiated arbitration proceedings in October 2023, and in February 2024, the parties agreed to stay the arbitration for six months.

- 4 -

No. 23-1966, *Fleming v. Kellogg Company et al.*

seeks to prevent arbitration, he bears the burden of proving that his claims are not well suited for arbitration. *Hawkins v. Cintas Corp.*, 32 F.4th 625, 629 (6th Cir. 2022) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). "[T]hat policy[,] [however,] must be balanced with 'ERISA's policy . . . to provide ready access to the Federal courts.'" *Id.* (internal quotation marks omitted) (quoting *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 931 (6th Cir. 2014)).

    A.  Legal Framework

*Federal Arbitration Act.* Fleming's appeal calls on us to consider the interplay between ERISA and the Federal Arbitration Act ("FAA"). The FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Under the FAA, arbitration clauses are as "valid, irrevocable, and enforceable" as any other contractual obligation, 9 U.S.C. § 2, and cannot be invalidated by "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

"A core concern of the FAA is protecting the enforceability of agreements to vindicate substantive rights through an arbitral *forum* using arbitral *procedures*." *Cedeno v. Sasson*, 100 F.4th 386, 395 (2d Cir. 2024) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). "But the FAA does not purport to reach agreements to waive *substantive rights and remedies*, and courts will invalidate provisions that prevent parties from effectively vindicating their statutory rights." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273–74 (2009)). In that vein, the Supreme Court recently reiterated that the FAA "does not require courts to enforce contractual waivers of substantive rights and remedies." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022).

- 5 -

No. 23-1966, *Fleming v. Kellogg Company et al.*

"[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum." *Id.* (citation omitted).

*ERISA.* Congress enacted ERISA "to protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting guidelines for fiduciaries of employee benefit plans and providing legal remedies. 29 U.S.C. § 1001(b). The heart of ERISA is the employee benefit "plan," a distinct legal entity with the power to sue or be sued. 29 U.S.C. § 1132(d)(1). ERISA requires, among many other things, that all plan fiduciaries act "solely in the interest of [plan] participants and beneficiaries" and act with care and prudence when dealing with plan assets. 29 U.S.C. § 1104(a).

ERISA Sections 409(a) and 502(a)(2) work in tandem to provide a path for plan participants to bring civil actions against plan fiduciaries who breach their duties to the plan. Section 409(a) describes the liability that attaches for breach of fiduciary duty. And Section 502(a)(2) essentially acts as the enforcement mechanism of Section 409(a): it authorizes the Secretary of Labor, a participant, beneficiary, or fiduciary to bring a civil action on behalf of the plan and to seek "appropriate relief" under 29 U.S.C. § 1109 for fiduciary breaches. 29 U.S.C. § 1132(a)(2); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253, 256 (2008).

*Effective Vindication Exception.* The judicially made "effective vindication" exception "finds its origin in the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies.'" *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013) (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19). Its key question is whether "the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Id.* at 235 (internal quotation marks and citation omitted). Thus, for example, "a provision in an arbitration agreement

No. 23-1966, *Fleming v. Kellogg Company et al.*

forbidding the assertion of certain statutory rights" could be invalidated by the effective vindication exception. *Id.* at 236.

Since the Supreme Court recognized the effective vindication exception nearly forty years ago in *Mitsubishi*, it has rarely applied it. *See Cedeno*, 100 F.4th at 395–96. Nonetheless, both this circuit and our sister circuits have invalidated arbitration clauses that prohibited plan-wide remedies under Section 502(a)(2) based on the exception. *See, e.g.*, *Parker v. Tenneco Inc.*, 114 F.4th 786, 798 (6th Cir. 2024); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1112 (10th Cir. 2023); *Henry*, 72 F.4th at 507; *Smith v. Bd. of Dirs. Triad Mfg.*, 13 F.4th 613, 621–22 (7th Cir. 2021); *Cedeno*, 100 F.4th at 400.

B. Kellogg's Arbitration Clause Bars Representative Actions

At issue in this case is whether and how the effective vindication exception may apply to Fleming's claims under Section 502(a)(2) of ERISA and to the FAA more broadly. The text of the statute and Supreme Court precedent demonstrate that ERISA contemplates both plan-wide remedies for certain breaches of fiduciary duties and the representative actions frequently employed to obtain those plan-wide remedies. *See Cedeno*, 100 F.4th at 402–03 (considering, in ERISA context, *Viking River*'s recognition of "a qualitative difference between" class action waivers and "waivers that preclude a party from arbitrating in a representational capacity *on behalf of a single absent principal*"); *Parker*, 114 F.4th at 798. Because Kellogg's 2021 arbitration clause precludes such representative actions, it is invalid and unenforceable.[4]

---

[4] While we assume that the 2021 arbitration clause is the operative agreement, our analysis would lead to the same outcome for the 2020 plan because it also prevented claimants from obtaining plan-wide remedies under ERISA.

No. 23-1966, *Fleming v. Kellogg Company et al.*

    1.  Fleming's Fiduciary Breach Claims Under Section 502(a)(2) Are Representative Actions Brought on the Plan's Behalf

Section 502(a)(2) provides that a plan participant may bring an action "for appropriate relief" under Section 409. 29 U.S.C. § 1132(a)(2). Section 409(a), in turn, provides that a fiduciary who breaches statutory duties:

> [S]hall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). The Supreme Court has explained that Section 409(a) "provid[es] relief singularly to the plan" and seeks to "protect the entire plan" rather than "the rights of an individual beneficiary." *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 142 (1985); *see also Patterson v. United HealthCare Ins.*, 76 F.4th 487, 498 (6th Cir. 2023) (stating that Section "1109 only contemplates suit to remedy harm to the plan itself"); *Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 825 (6th Cir. 2007) ("Because a § 502(a)(2) suit is a derivative action, a plaintiff bringing suit under this provision cannot obtain personal monetary relief, but must instead seek relief for the plan."). All claims under Section 502(a)(2)—including those pertaining to a breach that harms only a single participant's account—are not individual actions but instead remain "actions on behalf of a plan to recover for violations of the obligations defined in § 409(a)." *LaRue*, 552 U.S. at 253.

Applying both *Russell* and *LaRue* in *Hawkins v. Cintas Corp.*, we found that because Section 502(a)(2) "addresses losses to ERISA plans resulting from fiduciary misconduct, . . . suits under it are derivative in nature—that is, while various parties are entitled to bring suit (participants, beneficiaries, fiduciaries, and the Secretary of Labor), they do so on behalf of the

No. 23-1966, *Fleming v. Kellogg Company et al.*

plan itself." 32 F.4th at 632 (quoting *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) (footnote omitted)). And while Section 502(a)(2) claims are brought by individual plaintiffs who "will indirectly benefit from a remedy accruing to the Plan as a whole," the plaintiff's claim does not thereby become "individualized." *Id.* at 634.

We followed suit in *Parker*. Applying *Hawkins*, we concluded that when a named individual can be swapped out for any Plan participant, and "nothing material in the complaint would need to be changed," *Hawkins*, 32 F.4th at 635, the harms alleged by the named individual are plan wide, *Parker*, 114 F.4th at 798. The *Russell* Court drove this point home when it explained that "[a] fair contextual reading of the statute makes it abundantly clear that its [drafters] were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Russell*, 473 U.S. at 142. The plaintiff in *Russell* therefore could not use Section 502(a)(2) to recoup her personal losses because such losses would benefit her individually and not the entire plan. *See id.* at 148.

Here, Fleming seeks to redress a shared injury suffered by the Plan. He contends that the Plan paid over $7 million more than it should have for RK&A services between 2016 and 2020. Fleming, therefore, seeks to have Kellogg restore that amount to the Plan, and he seeks to have Kellogg pay any profits earned as a result of any fiduciary breaches to the Plan. Fleming also pursues equitable plan-wide relief authorized by Section 1109, including removal of the breaching fiduciaries and appointment of an independent fiduciary.

The harms that Fleming alleges are akin to the plan-wide harms we found in *Parker*. Like the plaintiffs there, Fleming alleges excessive RK&A spending, which harmed the Plan as a whole. *Parker*, 114 F.4th at 798. Fleming requests no remedy to his individual account; rather "the monetary remedies that [he] requests flow to the Plan[]." *Id.* In short, Fleming seeks "[p]lan-wide

- 9 -

No. 23-1966, *Fleming v. Kellogg Company et al.*

relief through a statutory mechanism that is designed for representative actions on behalf of the Plan," and representative actions only. *Hawkins*, 32 F.4th at 635.

Accordingly, in bringing a fiduciary breach claim under Section 502(a)(2), Fleming is acting—indeed, can only act—in a representative capacity on the Plan's behalf. *See Parker*, 114 F.4th at 801; *Cedeno*, 100 F.4th at 404–05.

> 2. Kellogg's Arbitration Clause Does Not Allow Fleming to Proceed in a Representative Capacity

The language of Kellogg's arbitration clause forecloses arbitration for class, collective, and *representative* actions. Kellogg argues that its arbitration clause does not limit Fleming's ability to proceed in a representative capacity. Specifically, Kellogg maintains that the district court correctly held that the Plan expressly allows any relief ERISA provides and therefore, "the provision properly applies to representative suits brought on behalf of the Kellogg Plan." (ECF 23, Appellee's Br. 19). For support, Kellogg commends *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019) ("*Dorman II*"), an unpublished decision from the Ninth Circuit in which a panel upheld an arbitration clause that required individual arbitration for claims similar to Fleming's. This argument fails for several reasons. First, as will be explained below, Kellogg's arbitration provision blocks Fleming from proceeding in a representative manner. Second, *Dorman II* suggests that a Section 502(a)(2) claim is "inherently individualized" in the context of a defined contribution plan and that a participant can therefore only seek losses sustained by his own individual account. 780 F. App'x at 514. This conclusion, however, cannot be reconciled with *LaRue*. *See* 552 U.S. at 256 ("[Section] 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries. . . ."). And significantly, we have concluded post-*LaRue* that participants are entitled to recover—on behalf of the plan—all losses to the plan resulting from the

- 10 -

No. 23-1966, *Fleming v. Kellogg Company et al.*

fiduciary breach.  *See Parker*, 114 F.4th at 800.  Therefore, Kellogg's bar on representative actions necessarily infringes on the remedies available to Fleming under ERISA.

### C. Kellogg's Arbitration Clause Infringes on Fleming's Ability to Effectively Vindicate His ERISA Claims

In barring Fleming's ability to bring a Section 502(a)(3) claim, Kellogg's arbitration provision violates the effective vindication exception.  "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral . . . forum."  *Preston v. Ferrer*, 552 U.S. 346, 359 (2008) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628).  Under the effective vindication exception, an arbitration provision is invalid if it attempts to "forbid[] the assertion of certain statutory rights," *Italian Colors*, 570 U.S. at 236, or if it acts as a "prospective waiver of a party's right to pursue statutory remedies," *Mitsubishi Motors Corp.*, 473 U.S. at 637 n.19.  While the use of the effective vindication exception is "rare," *see Smith*, 13 F.4th at 621, we find that this case fits within the narrow construction of that exception.

The 2021 arbitration clause prohibits arbitration from being "conducted on a . . . representative basis," denies the arbitrator "authority to arbitrate any claim on a . . . representative basis," and requires participants to "waive the right to participate in a . . . representative action."  (R. 12-3, PageID 268).  Because Section 502(a)(2) claims can only be brought in a representative capacity on behalf of the plan, an arbitration clause that eliminates a participant's ability to bring a representative claim effectively forecloses his substantive right to bring a fiduciary breach claim under that section.  Yet, Kellogg's 2021 arbitration clause does exactly that.  Section 17.4(b) states that

> [t]he arbitrator shall have no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis;

- 11 -

No. 23-1966, *Fleming v. Kellogg Company et al.*

> *provided, however, that the arbitrator may award any relief otherwise available under ERISA.*

(*Id.*) (emphasis added).  It also makes the representative action waiver non-severable by stating that if such waiver is unenforceable, "any claim on a . . . representative basis" must be heard in federal district court "and not in arbitration."  (*Id.*).

        1. Kellogg's "provided, however" Proviso Does Not Cure the Problems Created By Its Arbitration Clause

Kellogg hangs its hat on the inclusion of the "provided, however" proviso (singled out for emphasis above) which it contends "qualifies and conditions the clause's limitations on the arbitrator's authority to arbitrate only individual actions and award relief."  (ECF 23, Appellee's Br. 21).  Kellogg argues that the appropriate construction of this proviso is that it prohibits only class, collective, or "group" actions, which is permissible.  But reading Kellogg's proviso in this way is illogical.  The arbitration clause explicitly forbids "representative" actions.  And as we have stated, in the context of Section 502(a)(2) claims, "representative" has a technical meaning—in order to obtain plan-wide remedies such as full-loss restoration, Fleming must proceed as a representative *of the Plan*.  *See Cedeno*, 100 F.4th at 404–05; *Parker*, 114 F.4th at 798.

Kellogg claims that its proviso saves the day by granting plan participants access to any remedy permitted by ERISA.  It relies on the Seventh Circuit's decision in *Smith v. Board of Directors of Triad Manufacturing, Inc.*, which invalidated a similar arbitration clause prohibiting certain plan-wide relief.  13 F.4th at 621–22.  Kellogg suggests that the Seventh Circuit's only issue with the representative-action waiver was "its prohibition on certain plan-wide remedies, not plan-wide representation."  So, Kellogg claims, it fixed any problem with its waiver by adding the referenced "provided, however" proviso, making available any remedy provided by ERISA.  However, we are neither bound by *Triad* nor convinced by its dicta on this specific point.

No. 23-1966, *Fleming v. Kellogg Company et al.*

Moreover, since *Triad*, we have had occasion to address a similar arbitration provision in *Parker*. There, we did not limit our reasoning to the arbitration clause's express bar on remedies; we also considered the implications of the arbitration clause's bar on plan participants' access to a mechanism to vindicate their claims. *Parker*, 114 F.4th at 798. The problem with these representative-action waivers lies in the waivers themselves; waivers like the one at issue in *Parker* and Kellogg's limit access to ERISA's statutory remedy by foreclosing the only avenue through which a plaintiff may assert a Section 502(a)(2) claim. *Id.* at 800 (citing *Harrison*, 59 F.4th at 1106–07, 1109). It is because Section 502(a)(2) claims are inherently representative that Kellogg's clause is void on its face.

And the "provided, however" proviso does not alter this result because the proviso can only provide effective vindication if it affirmatively authorizes Fleming to proceed on behalf of the Plan, or in other words, in a representative capacity. But the proviso does not do this. Rather, by its plain language, the proviso modifies only what *relief* the arbitrator can award; there is no textual indication that it modifies the kind of claims that can be heard in arbitration—i.e., it does not make class or representative claims arbitrable.

2. Because Kellogg's Arbitration Clause and Proviso Are Unambiguous, We Enforce Them As Written

Seeking to salvage the arbitration clause, Kellogg argues that we should read the clause's language in such a way as to avoid the "incongruence" that Fleming's proposed construction would cause. Kellogg says we should not interpret the clause to foreclose an entire category of ERISA claims given that it specifically amended the Plan to allow whatever relief ERISA provides. *See Metro E. Ctr. for Conditioning & Health v. Qwest Commc'ns Int'l, Inc.*, 294 F.3d 924, 925–26 (7th Cir. 2002). "[T]he interpretation of an arbitration agreement is generally a matter of state law." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citing *Arthur*

- 13 -

No. 23-1966, *Fleming v. Kellogg Company et al.*

*Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)). The arbitration agreement at issue in this case is subject to Michigan state law.

Under Michigan law, "[i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Holland v. Trinity Health Care Corp.*, 791 N.W.2d 724, 727 (Mich. Ct. App. 2010) (quoting *Quality Prod. & Concepts Co.*, 666 N.W.2d 251, 259 (Mich. 2003)). So, the problem with Kellogg's argument is that, as a practical matter, the language in Kellogg's clause is unambiguous and requires no further interpretation to enforce it according to its terms. This is because "[o]nly when contractual language is ambiguous does its meaning become a question of fact." *Id.* (citing *Port Huron Ed. Ass'n v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237 (Mich. 1996)).[5]

Context reveals the lack of ambiguity. To avoid the alleged "incongruity," Kellogg asks us to read "representative" in the arbitration provision as alluding to "group" actions, not those brought to vindicate wrongs to the Plan. To be sure the word "representative" carries several meanings. But Kellogg cannot avoid the fact that, under Michigan law, contractual definitions are informed by context. *See Hastings Mut. Ins. v. Safety King, Inc.*, 778 N.W.2d 275, 294 (Mich. Ct. App. 2009) (citing *Henderson v. St. Farm Fire & Cas. Co.*, 596 N.W.2d 190, 194 (Mich. 1999)). The arbitration clause explicitly references "any relief" under ERISA. (R. 12-3, PageID 268). ERISA only affords relief under Section 502(a)(2) claims via "representative" actions—i.e., those

---

[5] Kellogg suggests that the arbitration provision is ambiguous and retreats to the Plan sponsor's purported intent to avoid the effective vindication problem. But Kellogg took the position below that "[t]he arbitration clause at issue here is not ambiguous." (R. 27, PageID 963 n.3). It cannot take a contrary position on appeal. *See Est. of Romain v. City of Grosse Pointe Farms*, 935 F.3d 485, 491 (6th Cir. 2019) (quoting *Bowles v. Marx Hide & Tallow Co.*, 153 F.2d 146, 149 (6th Cir. 1946) ("[A party], on appeal, cannot change the theory of his case made by his pleadings and his conduct of the case.")); *Montanez v. City of Orlando*, 678 F. App'x 905, 912 (11th Cir. 2017) (stating that a party "cannot change positions on appeal to [avoid] reversal").

No. 23-1966, *Fleming v. Kellogg Company et al.*

brought on behalf of the plan to vindicate an injury to the plan. *Hawkins*, 32 F.4th at 635. Even though Fleming brings the action as an individual plaintiff, he sues—and can only sue—under Section 502(a)(2) as a representative of the Plan. *LaRue*, 552 U.S. at 253, 256. Kellogg cannot avoid the implication of the well-settled legal doctrine its contract language evokes: contracts are defined by their context. This is especially so here, where Kellogg admits it added the "provided, however" proviso to address incongruities found by other courts between Section 502(a)(2) actions and collective-action waivers. "[T]he language used by [Kellogg] is plain and unambiguous even though the [sentences within the provision], when read together, are completely incongruent." *Gauthier v. Alpena Cnty. Prosecutor*, 703 N.W.2d 818, 822 (Mich. Ct. App. 2005); *see also Zwiker v. Lake Superior St. Univ.*, 986 N.W.2d 427, 442 (Mich. Ct. App. 2022) ("It is not this Court's role to undermine the parties' freedom to contract by rewriting clear contractual language to comply with what the Court perceives as the parties' intent."). Kellogg's added proviso aside, "[t]he individual arbitration provision . . . functions as a prospective waiver of [Fleming's] substantive statutory remedies." *Parker*, 114 F.4th at 801.

        3. The Effective Vindication Exception Invalidates Kellogg's Arbitration Provision

A Plan participant's ability to bring a breach of fiduciary duty claim under Section 502(a)(2) is a substantive right granted by ERISA. *Id* at 798. And as discussed, all Section 502(a)(2) claims initiated by a plan participant are necessarily brought in a representative capacity on behalf of the plan. Here, Fleming's breach of fiduciary duties claims were brought on behalf of the Plan. Despite Kellogg's arguments to the contrary, its arbitration clause prevents a plaintiff from proceeding in a representative manner. And, while Kellogg contends that the manner of bringing suit is merely a procedural matter, in this context, it has the practical effect of blocking a whole class of claims. In doing so, it effectively eliminates a participant's substantive right to

No. 23-1966, *Fleming v. Kellogg Company et al.*

bring a fiduciary breach claim under Section 502(a)(2). *See Harrison*, 59 F.4th at 1106–07 (stating that a "prohibition on a claimant proceeding in a representative capacity is inconsistent with, and prevents a claimant from effectively vindicating the remedies afforded by, § 1132(a)(2)"); *see also Harris v. Paredes*, No. 3:23-CV-50231, 2024 WL 774874, at *6 (N.D. Ill. Feb. 26, 2024) (explaining that "a claimant's right to effectively vindicate the remedies available under ERISA would be frustrated" by an arbitration provision barring representative claims under Section 502(a)(2) but rejecting the effective vindication challenge because of an amendment to the clause removing the language that barred claims brought in a representative capacity).

And as we recently held, arbitration clauses that forbid participants from obtaining plan-wide remedies under ERISA are unenforceable. *Parker*, 114 F.4th at 801; *see also id.*, at 798–801 (collecting sister-circuit cases holding same). Given the impermissible restrictions built into Kellogg's arbitration provision and its non-severability clause, we find that Kellogg's arbitration provision is invalid and unenforceable. And because the clause is void, we decline to reach Fleming's alternative argument for reversal that he did not consent to the arbitration clause.

### III.

For the reasons discussed, we reverse.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1966

BRADLEY H. FLEMING, individually, and as representative of a class of participants and beneficiaries of the Kellogg Company Savings and Investment Plan,

    Plaintiff - Appellant,

    v.

KELLOGG COMPANY; ERISA FINANCE COMMITTEE OF KELLOGG COMPANY; ERISA ADMINISTRATIVE COMMITTEE OF KELLOGG COMPANY; STEVEN A. CAHILLANE,

    Defendants - Appellees.

**FILED**
Oct 21, 2024
KELLY L. STEPHENS, Clerk

Before:  GIBBONS, KETHLEDGE, and DAVIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED.

**ENTERED BY ORDER OF THE COURT**

*Kelly L. Stephens*

Kelly L. Stephens, Clerk